The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Thank you. Please be seated. We're happy to have you with us today. We'll hear argument first in number 221129, Erie Insurance v. Cooper. And Mr. Perry, whenever you're ready. Thank you, Your Honor. Good morning. May it please the Court, my name is Matthew Perry. I represent Erie Insurance Property & Casualty Company. This case involves an appeal of a decision of the District Court for the Southern District of West Virginia where, as a matter of first impression, the Court held that insurance companies in West Virginia are required to offer underinsured motorist coverage to autos that are not owned by the insured and not specifically scheduled on the policy of insurance. In reaching that decision, the District Court recognized that the Erie policy and its terms did not provide coverage for underinsured motorist coverage to a non-owned auto. But based on its finding that West Virginia Code 33631 in public policy required offers of underinsured motorist coverage on all autos insured by the policy, it added underinsured motorist coverage as a matter of law and held that the appellee, Mr. Cooper, was entitled to underinsured motorist coverage as a result of an accident he was in when he was a guest passenger in a co-employee's vehicle which was owned by Rick Cuffman. Mr. Perry, could I ask you a preliminary question? And that involves your position on certifying this case to the Supreme Court of Appeals of West Virginia. And the reason why I'm asking you, we had an almost exact same circumstance in Virginia, the precise statutory language in Stone v. Liberty Mutual, and this was a 1996 case where the Fourth Circuit certified to the Supreme Court of Virginia the exact same question regarding UIM coverage. And the Supreme Court of Virginia answered actually in accordance with your position. In terms of establishing precedent for the state and for policyholders in West Virginia, it just occurs to me that it might be valuable to certify this question. Do you have a position that you'd like to express on that? Yes, Your Honor, and I had that thought. I think that with the issuance of the case Progressive Max Insurance v. Brim, which is cited in my reply brief, which was issued by the West Virginia Supreme Court during the briefing of this appeal. But that was a rental car case, wasn't it? It was a rental car case, but it was a non-owned auto. And the court in that case, relying on Starr v. State Farm, which is contained in the brief, interpreted West Virginia Code 33631C and the definition of an insured to create two classes of insureds. A Class I insured is the named insured, his or her spouse and any resident relatives, and a Class I insured is entitled to coverage whether they are in a vehicle or not and extends to non-owned autos. As a Class II insured, the statute defines that insured as one who is entitled to coverage only while using a motor vehicle to which the policy applies. And the court in Brim recognized that the two guest passengers in that rental vehicle were occupying a non-owned auto and that as Class II insureds, underinsured motorist coverage did not extend to them, although it did to the driver because it was her policy. And while that case doesn't deal specifically with offers of underinsured motorist coverage, it does answer the question kind of in a backhand manner, and that is this. If underinsured motorist coverage extends to a Class I insured in a non-owned auto, then there would be no reason for an insurance company to be required to make a separate offer of underinsured motorist coverage for that non-owned auto. Counsel, I think I understand your argument, although this is a complicated area, but perhaps one can sort of extrapolate from that opinion the answer you're looking for under this to this different question. But is that a reason not to certify the case? I mean, why isn't that a question for the West Virginia Supreme Court to figure out? Your Honor, I would agree. I think that if there is any doubt left after the Brim decision, this case and the decision of the District Court has a wide-reaching impact on insurance policies in West Virginia and how offers of underinsured motorist coverage should be handled. I believe that if there's any doubt, it should be certified to the Supreme Court for a definitive answer on this. The fact that we're dealing with a commercial auto policy in this case and it's a little bit different than your standard personal auto policy because the declarations specifically listed non-owned autos as a class of vehicles insured. It's not typical that you would see that in the context of a personal auto policy. But West Virginia has held that any time a driver permissively uses another vehicle, that liability coverage for the driver extends to that non-owned auto. So what's left open with a question from the District Court's decision in this case is how far do you have to go as an insurance company to be able to offer underinsured motorist coverage that you have no real way to identify? As I understand it, and you can tell me if I'm wrong, there are a lot of states that have adopted something very like the same rule as the District Court here and it seems to be workable in those states. I can't find any indication that in states that have the same rule that the District Court found in this statute, the auto insurance industry has fallen apart. It's workable, right? Here's my concern, Your Honor, on that issue. West Virginia Code 33631B is a statute that was enacted by the legislature in response to a decision issued by the Supreme Court in bias versus nationwide. And what bias held was that an insurance company is required to make a commercially reasonable offer of underinsured motorist coverage such that the insured can make a knowing and informed decision as to whether to accept or reject that coverage. 33631B expressly requires that an insurance company identify the specific number of vehicles to which the policy is going to apply. If the District Court's decision is that non-owned autos, that an insurance company has no way to identify as a specific number, then the insurance company is not in a position to meet that standard of a commercially reasonable offer. But the policy lists something like 1 through 25. I mean, they're on the policy for liability purposes. If you can insure them for liability purposes, if it's sort of a finite enough set for that, there's some additional problem over on this side? I think there's two components to that question, Your Honor. First, the liability coverage that a commercial auto policy provides is intended for the benefit of the named insured. Yeah, but I'm just trying to figure out, like, the workability problem that you're identifying. Why isn't it a problem also on the liability side? What's special about the UIM side? In order to make an offer of underinsured motorist coverage, you have to identify the specific number. That is not required for liability coverage. And there's a distinction between, and Diaboli's response brief in this case kind of goes to it, this question of being able to underwrite and identify a premium cost that would be associated with coverage for a class of non-owned autos. The underwriting of that and determining an appropriate premium to charge is wholly different from the statutory requirement that you have to identify the specific number of vehicles that are subject to the offer of underinsured motorist coverage in order to make a commercially reasonable offer. If an insurance company cannot make a commercially reasonable offer, the net result is that underinsured motorist coverage gets added by operation of law to the policy in an amount equal to the liability limits. And so I think that 33631B creates a very big problem for the insurance industry in West Virginia and how they can comply with that statute in conjunction with the district court's opinion extending offer requirements to non-owned autos. Okay, Mr. Perry, could you walk us through looking at 31631 subsection C, the definition of insured, and could you walk us through all aspects of that definition and explain your position with regard to that? Yes, Your Honor. So insured is a defined term in 33631C. And the way that the West Virginia Supreme Court has interpreted that statutory provision in STAR and now in BRIM is that a class 1 insured is named insured, is a her spouse, and any resident relative. And the language is, I smile a little bit because it's the first time I've dealt with a statute that the significance of A and B are very significant because as a class 1 insured, the policy applies to any vehicle, a vehicle, whether it's owned or not owned. And also, as one court put it in my brief, if you're in a bathtub and are hit by a car, as a class 1 insured, underinsured motorist coverage will extend to that class 1 insured. But as BRIM articulates, a class 2 insured is only entitled to the benefits of underinsured motorist coverage if they are occupying or using a motor vehicle to which the policy applies. And that language, to which the policy applies, has been interpreted by the West Virginia Supreme Court of Appeals as only applying to the vehicle that's specifically insured. And it's for that reason that I think that the district court's opinion runs afoul of the interpretation of that statute that wasn't exactly fully clear at the time that the court issued its opinion because the BRIM decision came out during the pendency of this appeal. But it is the first time that the West Virginia Supreme Court spoke to underinsured motorist coverage in the context of a non-owned auto. And I apologize. I see that I'm out of time. Got some time on rebuttal. May it please the court, my name is Jill Rice, on behalf of the West Virginia Insurance Federation as amicus curiae. The federation has joined in support of Erie's position in requesting the court reverse the district court's holding that West Virginia public policy requires that insurers make a UIM offer of coverage for non-owned autos. Very simply, the insurance community, and really all of us, rely on the predictability of our laws. And this particular decision from the district court thwarted the insurance community's ability to rely on how we handle UIM coverage and those offers on non-owned autos. The district court really found a gap in insurance coverage with respect to UIM law, which actually does not exist in the federation's view, and then improperly filled in that gap with its misinterpretation of our public policy in West Virginia. The court has instructed, this court has instructed, in St. Paul Fire and Marine v. Jacobson in 1995 case, that absent a clear and dominant articulation of a state's public policy, the district court should not create and expand that state's public policy. I think the district court was construing the statute as best it could. And I have to say, it's kind of a tricky statute. I guess I'm trying to find the distinction between owned and unowned automobiles in subsection A, kind of the critical section. Where do you find that distinction? It's actually a distinction in the policy. So your argument is not textual? You want me to go to policy and skip past the statute? I think it's important that we look at both. I think in West Virginia, as in other states, we're probably supposed to start with the text at least. We are. But 33-631 does refer to the owner of the vehicle. That's in the or sentence, right? The owner of such vehicle or may be issued or delivered by any insurer license in this state upon any motor vehicle. So what do I do with that? We actually disagree with the appellee's position with respect to this. The way 33-631, the text of that statute, that or in our position, the or really means the owner of the vehicle and the insurer. That statute is the omnibus statute that really addresses both sides of the transaction. The issuance of the policy and the insurer issues and the policyholder receives the statute. But it really relates to the issuance of the policy. Counsel, why isn't the best textual answer for you the language after provided further in B? It says that such policy or contract shall provide an option to the insured. While it doesn't say named insured or class one insured, the only person who could get an option is the named insured there. And then it goes on with the appropriately adjusted premium to pay the insured. And I get, again, they don't say named insured there, but it seems to be referring to the same insured, which has to be the named insured. So, again, it's probably not the best written statute because they use named insured in C and not there. And isn't that the best textual argument than trying to... I think Judge Harris is right. If you go up to A, it's hard to really clarify on versus not A. That is correct. And West Virginia has recognized in both the text and our courts have recognized in interpreting these texts the key distinctions between liability coverage, UM coverage, and UIM coverage. So these have been interpreted by our courts repeatedly. And I think that's the fallacy in what the district court did, was it found a gap in the text and in our law generally and didn't dig in. We have a series of cases. And there really wasn't a gap in West Virginia law. And the district court filled it in because our courts have recognized these key distinctions and the differences in how they're treated. I mean, our courts have said, our Supreme Court in West Virginia has said, there's a distinction. Liability coverage protects third parties from the insured's own negligence. Uninsured motorist coverage protects the policyholder from the risk of negligence from someone with no insurance. And underinsured coverage is different. And our law has been clear. Underinsured motorist coverage exists to enable the insured to protect himself if he chooses to do so. Can I ask you a question, Counsel? The district court said that the West Virginia Supreme Court had not weighed in on this particular question. And I understood, actually, both of your colleagues here today to agree with that. Do you think that was wrong, the West Virginia Supreme Court has answered this question in front of us? I believe that this particular question has not been answered, but it could be extrapolated based on the Class I versus Class II distinctions. You disagree with the district court's construction of the statute. We do. But that's a little bit different from it's a fallacy and filling in gaps that don't exist. Everyone's just trying their best to construe a fairly complicated statute. We agree. We agree. But we do believe that it could have been constructed appropriately and that there, I mean, the Brim case, though, we believe is determinative here. And as a consequence, I mean, we discussed certifying the question. And the district court did say, you know, the law isn't clear. And in that particular case, given the district court's position at that time, that would have demanded at that time a certified question. We agree. But at the same time, given where we are in the issuance of the Brim decision, we believe that it is clear. What about the language in the Brim decision specifically are you relying on? Because I'm having a little difficulty finding language that would apply precisely to your position. It elevates the issuance of that policy to the owner of the vehicle. And you're saying that because in a rental context, that would be the case. It necessarily is the case if it is a numerically covered liability policy. The two passengers in the rental car were not insured because the rental car was not a covered auto. It doesn't, it seems like that is at least, I understand your argument about extrapolation and interpretation. Obviously, we're always making analogies. But there does seem to be an important distinction in that the vehicle in question here is by terms on the liability policy. Isn't that different? I mean, that's their entire argument, that once the car is on the liability policy, it's just covered as to everything. But here, the car is not on the liability policy, is it? Or is it? It is not in that particular situation. Okay. Well, that seems like a, I'm not saying that the West Virginia Supreme Court might not say, oh, BREM is sort of a precedent here. But it is a different question whether UIM insurance has to be offered as to every car on the liability policy. And that was the policy that was adopted out of whole cloth by this district court. Out of whole cloth again. I just wonder whether that's really necessary. I mean, it's a complicated statute. It is, indeed. And I apologize, I'm out of time. Thank you. Good morning, and may it please the Court. My name is Chad Duffield. I represent Rep. E. James Schuyler Cooper. I'm with the law firm of Farmer, Kline & Campbell in Charleston, West Virginia. The West Virginia Omnibus Statute expressly requires all insurers, anytime they provide liability coverage for a covered vehicle, they must offer underinsured motorist coverage. Now, unlike some of the states referenced by the appellant and our amicus friends, neither the West Virginia statute nor any opinion of the West Virginia Supreme Court provide a carve-out, which is what Erie is asking for in this case. And that is why the United States Southern District Court for the Southern District of West Virginia in the Walker-Harris case specifically found that the omnibus statute afforded no distinction between the types of liability policies that trigger UIM offers and those that do not. Specifically, Judge Copenhaver found in that case that had the legislature intended to exclude certain types of liability policies, it could have done so. Judge Copenhaver found that the omnibus statute provided no room for statutory construction. Mr. Duffield, you've got a situation here, though, where the subsection C of the statute it issue talks about the motor vehicle to which the policy applies. Do you place any import on the use of the article the motor vehicle to which the policy applies? No, Your Honor. And the reason I don't is because the case law that is interpreted in the statute understands  that can be insured by a policy. Okay. And this is a follow-up, then, on my part. So if you could help me. You've got 25 vehicles here, 1 to 25, that are clearly insured under the Specification 12 of the Policy for Liability. Okay. We know that. Non-owned vehicles. What happens in practice, then? They don't have to be identified, those vehicles 1 to 25. Is there anything in the code that requires the policyholder to notify the insurance company when vehicles change? In other words, anytime you have floating coverage for a range of number of vehicles without any identification of the vehicle, how does the insurer go about the process of offering UIM coverage to those vehicles? It just seems to me, practically speaking, something that's difficult. Yes, Your Honor. I think I understand your question. I'm not aware of anything in West Virginia code that would require the insured to notify the insurance company at that point. I believe most policies require insureds to notify someone if a specifically identified vehicle is being substituted. So I think that's usually handled within the policy. However, the case law that is interpreted in the statute views any vehicle that is a covered auto as being different than other situations. And so in this case, where we have autos that are covered by the Erie policy, including the Silver Auto, the Ram, and non-owned vehicles, those are all covered autos. And so back to your original question, I don't believe that it makes any difference that C refers to the motor vehicle because the case law has interpreted as if it is a covered auto, then that's where we get into the situation But it's 1 to 25 that I'm interested in. How does that practically play out in terms of how the insurer, in this case Erie, complies with the statute? Yes, so the statute and the informational letter interpreting the statute in West Virginia require the insurance company, when they make that underinsured motorist coverage offer, to identify not the specific vehicles, but the number of vehicles that are subject to that premium. So that comes into play because when they make an underinsured motorist coverage offer, the form will have a space where the insurance company is supposed to identify the number of vehicles that are subject to that premium. And so that is the significance and the extent to which the insurance company has to identify... I see, so essentially your answer is, well, they can do it for liability. It's really the same process for doing it for UIM. Absolutely. This isn't a situation where we don't know the number of vehicles. Erie has identified those on the policy themselves. Why do you say we don't know the number of vehicles? It says 1 through 25 EMPLS. That looks like an abbreviation for employees. Is it even talking about the number of vehicles or is it talking about the number of employees? Your Honor, that would be a better question for Erie and the underwriters that wrote this. Fair enough. I mean, maybe there's some ambiguity there, but the point I thought Judge Kenyon was getting to is this issue of how the insurer can comply with the statute and identify the number of vehicles covered by the offer. And if that applies to employees, it doesn't identify 25 vehicles. Any employee presumably or may have more than one vehicle. I mean, I assume your position would be any vehicle that the employee was using in the course of their employment would be a non-owned vehicle, but we don't even know how many they are. I mean, what if they used their spouse or partner's vehicle? What if they borrowed a vehicle? I mean, I think that's the point. We don't know what that number of vehicles would be. I understand, I think, the question in the inquiry. What I would suggest is that what Erie is attempting to do there is to identify the number of potential vehicles that may be at issue. They apparently know that there's 25 employees or up to 25 employees. So I think as part of writing the underinsured motorist coverage offer, they could have simply put 25 vehicles subject to that underinsured premium. Yeah, and perhaps, but I think the question is if you assume there's at least some question in the statute about whether it's supposed to apply to non-owned vehicles, we look for other ways to figure that out. And if there is a requirement that you identify a specific number of vehicles to which the offer would apply, and you can't do that, it just conceptually doesn't work, that informs whether that statute, which might be more clear, does or does not apply to non-owned vehicles. I think that's the point, not how do they do it, does the fact that you probably can't do it inform the question that we're grappling with about whether this even applies to non-owned vehicles. I would suggest, Your Honor, that it doesn't. The purpose of that is to make sure that the insured receives a commercially reasonable offer. And part of a commercially reasonable offer is understanding the rate calculation, how they got the premiums that they got. So I would suggest that that is not determinative of the issue here. Can I ask one follow-up? I had asked your colleague about the language after provided further in B of the statute. If you want to get there. Yes, Your Honor. Does your position require that the first insured after provided further means named insured, and the second one does not? No, Your Honor. Our position is that if the legislature intended to use the word named insured, they would have done that. I'm sorry, go ahead and finish. I didn't mean to do that. That's okay. West Virginia Code 33631C, in which they provide definitions, they provide two definitions, named insured and insured. And so it says it applies to the entire section, which would mean it applies to B. Let me follow up on what you're saying when it applies to B. So the language that such policy or contract shall provide an option to the insured, you're suggesting that option applies to any insured under the definition of C? Well, there are provisions in West Virginia for which certain people under the policy, named insured, can make that selection. But no, Your Honor, I see your point. They have chosen to use the word the insured with regard to who the option must be provided to. So that has to be named insured, right? Necessarily under existing West Virginia law, I believe that's correct. Okay. So that means under your interpretation, when it says insured there, it means named insured. But where it says insured one, two, three, four, five, six, seven, eight words later, it doesn't. Yes, Your Honor, because the definition of insured in 33631C would include the named insured, but also anyone who uses the motor vehicle to which the policy applies. And so perhaps the legislature should have used the word named insured the first time that the insured is listed there. Or perhaps they meant named both places. That's our question. That's what we're trying to figure out, and it's not perfectly written. I understand, Your Honor, and I would submit that Judge Copenhaver did not find that there was any distinction there. I would also suggest that to the question of whether this case should be certified, the issue is, is there an absence of controlling authority? Our position is the statute provides clear authority, as recognized by Judge Copenhaver in the Walker-Hare case. Additionally, I believe we have Supreme Court case law which would answer this question. If we look at the Starr v. State Farm Fire and Casualty case, and when my friends across the aisle have talked about Class I and Class II insurance, no doubt Mr. Cooper was a Class II insured here as a guest passenger in a vehicle. If you look at the West Virginia cases that have been cited for each side, there is a critical difference. And that is, is the vehicle an insured vehicle under the policy? If so, the guest passenger, despite being a Second Class insured, would still be entitled to underinsured motorist coverage. That's what happened in Starr. If we look at the facts of Starr, the Second Class insured was not able to stack coverages on his friend's policy, but she was entitled to the policy coverage for the vehicle that she was in. And that is the difference here, is that Mr. Cooper was in a vehicle, which undoubtedly, by the terms of the policy, is a covered auto. And therefore, as a Second Class insured, he is entitled to underinsured motorist coverage for that covered vehicle. So I think that is a critical difference and the reason why this issue should not be... Okay, so Mr. Duffield, if you were doing, let's say a person was doing delivery work for 12 companies, are you saying that that person would be entitled to stack 12 policies for UIM coverage? No, Your Honor, I think... Okay, why not, under your position? Yes, because the Starr case, Supreme Court of West Virginia has said that a Second Class insured cannot stack coverages... Oh, okay. ...for other policies that are not his own. And so that would, I don't believe, would be the outcome of your scenario. I think reference has been made in the briefs to the Levine decision and Judge Keenan had mentioned the Stone decision here in Virginia. And I would submit that the Levine decision is distinguishable for a number of reasons. Again, in this jurisdiction, in Virginia, there was a Supreme Court decision interpreting the statute. Right, that's because the Fourth Circuit certified it. I understand. And it's the exact same statutory language. I mean, I sat on that case in the Supreme Court of Virginia. So, you know, it's sort of unfair to tag team you on it, but it's the same statutory language. Virginia has the same language, and the Fourth Circuit said, no, this is something that the state court should do. There are millions of, or West Virginia doesn't have as many people, but there are at least a few million policyholders who would benefit from precedential authority rather than simply the Fourth Circuit's opinion on what that policy says and what the statute says. Your Honor, respectfully, I realize you sat on that case right before we came in here today. So I appreciate your familiarity with that case. In fact, Counsel Crosley and I were just discussing that before we came in. But I would submit that there is a difference. In Virginia, there is a provision of the omnibus statute that excludes uninsured motorist coverage when the primary purpose is to provide coverage in excess of other insurance. That's 38.2-2206. That's been in the law since before the Stone decision was decided. And so unlike the situation here in West Virginia where there is no distinction among liability policies, as Judge Copenhaver found in Walker-Herrick, we had a situation in Virginia when the Stone decision was decided where there was a carve-out for certain policies that provide excess coverage. And so I think that is a critical distinction between West Virginia and Virginia law with regard to this issue. Additionally, there were other distinctions with regard to Levine that I think may or may not play into the situation. There was an ambiguity argument there. I do not believe that Levine is determinative here, and I also don't believe it would be a reason to certify this question to the West Virginia Supreme Court because, again, I believe there's clear, distinguishable law on this issue, both from the Southern District and from the Supreme Court of Appeals in the Starr decision. I would submit that it's important not to get confused as to what an insurer can do after an offer is made. 33-631-K certainly provides insurers the ability to include certain exclusions which are consistent with the premium charged. That is a different issue. That is an issue that comes after an offer is made. In West Virginia, the law is if an offer is required and it's not made, that coverage is provided by operation of law. One may say, well, why is that fair in a case where there was no premium paid and now Mr. Cooper is eligible for $1 million of underinsured coverage? Respectfully, that's the way West Virginia law works, and that's the exact decision and outcome that was reached in the Walker-Hara case. In that case, the insured, despite the name insured not paying any premium for underinsured coverage, received $1 million of underinsured coverage under the umbrella policy. Why was that? Because the insurance company failed to offer underinsured coverage when it decided to offer liability coverage. That is the same outcome that Judge Berger reached in this case, and I would submit is a reason why this court should affirm Judge Berger's decision. I also want to address the issue in the briefs as to whether Mr. Cooper qualifies as insured for purposes of this coverage. I think both parties have tried to state the policy language as clear as possible, but as we see through the policy and policy change endorsements, we have to jump through the policy to see what is really applicable. So the policy change endorsement ultimately says that insureds are those folks who appear under the liability coverage as persons we protect. And if we look at that section of the liability portion, which now is applicable to the underinsured portion by the policy change endorsement, who is the insured? Well, it's you for any auto we insure, so that would be the employer in this case. But number two, anyone else while using an auto we insure, there's no question that the auto that Mr. Cooper was in, Mr. Huffman's vehicle, is a covered auto. It's an auto that was insured by this policy for liability purposes. And thus, by virtue of the language, anyone else while using an auto we insure, Mr. Cooper was using that vehicle. Well, are you relying on the language of the policy to support that argument? Or is your argument purely statutory? Because it seemed to me that in your brief you were doing both. Yes, Your Honor. And now you seem to be moving to the policy language. Your Honor, I think you're correct. It is both. And we talked before about subsection C defining insured. Right. But item five in the policy talk says insurance is provided where premium is shown for the coverage. And then in talking about the non-owned vehicles, the premium is only shown for liability protection.  That is correct, Your Honor. So don't we really have a case where it's covered by the statute, the right to UIM coverage, or nothing? In other words, the Judge Berger was correct as far as the policy goes. The policy doesn't provide it. It specifically excludes it under item five. Your Honor, I believe Judge Berger found that Mr. Cooper qualifies as an insured and that this vehicle was a covered auto. I think Judge Berger recognized this. I thought she found that the policy – maybe I'm mistaken there. But I thought that she found that the duty was under the statute. I'll have to look. I'll check back. Perhaps I made a mistake there. To answer your initial question, Your Honor, I do believe we're relying both upon the statute and the policy language. I would note that another distinction between the Virginia case that we've discussed and this one is – I'm sorry, counsel. I just want to make sure I understand what you're talking about with respect to the policy. You're arguing that even if the statute did not require an offer to be made, the claimant here is covered anyway under the language of the policy? Is that your argument? Yes, Your Honor. I think that gets us into later parts of my brief where we talk about the ambiguous nature of the policy. Okay. But that's not what the district court held, right? Yeah, the district court on page 11 says the court finds that the policy read as a whole does not provide UIM coverage for non-covered autos. I mean, she pretty clearly said that. So, I mean, how do you now say that she ruled otherwise? And I apologize if – I didn't mean – you know, I didn't want to confront you because, you know, I had to go back and check. But it just seems that doesn't help the argument because she didn't agree with you on that. So we've got to look at the language and you've got to tell us how the policy or item 5 specifically excludes coverage unless there's a premium shown. And there is no premium shown for the number 12 autos, which are the non-owned autos, other than liability. Correct, Your Honor. I don't believe Judge Berger reached the ambiguity argument that we've made. However, I would note that on the deck page it also says that the policy form endorsement for underinsured coverage is applicable to all autos. And so there's some ambiguity between the deck page itself. What I was referencing that Judge Berger – see that I'm out of time. May I finish my answer? Thank you, Your Honor. What I was referencing was Judge Berger's comment on Joint Appendix 549 where she found that Mr. Cooper was not a named insured, but he was included in the policy definition of anyone we protect and a person using an auto we insure. And so if underinsured coverage in this policy adopts the definition from the liability section, I believe that she did conclude there that he would qualify if underinsured coverage was on the policy. But I will submit that our argument is that the statute requires it, and I think that that is consistent with this part of the policy. Thank you, Your Honor. Mr. Perry, you've got some rebuttal time. Yes, thank you. I want to start by just briefly addressing the issue raised as to whether or not Mr. Cooper qualifies as anyone we protect, which the district court did cite that in its opinion, although I don't know that it's germane to the ultimate issue in this case as to whether it offers what underinsured motorist coverage is required. But at JA-146, it's the language of the policy that defines the term anyone we protect, and it does say that it's anyone else while using an auto we insure with your permission except. And if you go to subsection B, it says your employee if the auto we insure is owned by that employee. So there is an argument that Mr. Cooper would not have qualified as anyone we protect under the policy. And it goes back to the issue of why is Pison Management purchasing liability coverage for autos that it doesn't own or hire autos? And it is to fill a gap in coverage that protects Pison Management. If Mr. Huffman driving his own auto in the course of his COVID deployment was to negligently cause a collision, Pison Management would be liable under principles of respondeat superiority. They would not qualify for coverage under Mr. Huffman's liability policy because they're not using the auto that was involved in the accident. So it's a very clear express intent to try to protect the employer from that exposure, and that's what the purpose of that liability coverage is. And if you look at the definition of non-owned autos in policy, it's employers non-owned liability in parentheses. The other point I'd like to address is this issue of whether or not this is a covered auto. Mr. Huffman's vehicle was not specifically listed on this policy. It simply listed a class of autos. And when you look at the Walker case that is cited by Apple Lee, that was because that policy specifically insured a listed vehicle on that policy that triggered a requirement for UIM coverage. So it doesn't apply in a situation where you're dealing with a class of vehicles instead of a specifically listed vehicle that would have been identified on the policy. I know of no situation where you would specifically insure a listed vehicle that is a non-owned auto in West Virginia. And I think that takes you back to the statute. And I agree, Your Honor, with the point you make about subsection B. But if you look at A, there's only one recipient that's identified in subsection A of that statute, and it is the owner of the vehicle. And if permissive use is tied to the ownership of that vehicle, which it is later in subsection A, the reason that they have to broaden the term owner to include a custodian of the vehicle is because it's the owner who provides the permissive use of that vehicle. And that was also recognized by the Virginia Corp in Stone, is that permissive use is tied to the ownership. If you don't own the vehicle, you can't give permission to use it. But what the statute does is to ensure that if there's a custodian, for example, if I bought my son or daughter a vehicle that they used, they don't own it, but they're a custodian, they have the ability to grant permissive use. And that's the purpose of that statute, but it reflects back to the fact that it all goes back to the owner of the vehicle, which is why it should not include offers of underinsured motorist coverage requirements for non-endowments. Thank you. Thank you very much. We will come down to Greek Council and hear our next case.
judges: Pamela A. Harris, A. Marvin Quattlebaum Jr., Barbara Milano Keenan